Case No. 15-1081 at Elm, IronTiger Logistics, Inc. Petitioner v. National Labor Relations Board Mr. Kukowski for the petitioner, Ms. Berta for the respondent Mr. Kukowski, Petitioner May it please the Court, my name is Tom Kukowski, I represent the petitioner, IronTiger, here. I'd like to reserve two minutes for rebuttal, if it's at all possible. Thank you. It's elementary that the Board's decision could be upheld, but it's not so differential that this Court will rubber-stamp a Board decision in which the Board ignores precedent and, as important, errors in terms of citing cases or the facts in this case. The Board in this case ignores truth, the Supreme Court's decision that dealt with information requests. The Court in that case says we should look at all the circumstances of the case before we make a decision. You think the key to this case is the proposition that the Board does not have authority to conclude that if a union seeks information which is presumptively relevant, an employer has an obligation to respond, one way or another, within a reasonable period of time? I disagree with the Board's decision on that for two reasons. Wait a minute, you think the Board may not conclude that as a general proposition? Yes. Why? Because in order for the Board to determine that a company is a law violator, they've got to find that they've bargained in bad faith. And that precedes certain elements. One is that it has to be presumptively relevant. It's not presumptively relevant in this case. And number two, even if it was presumptively relevant... Oh, and now you're getting into the question of whether it's presumptively relevant. Assuming it is presumptively relevant, is it your judgment, is it your view, the Board can't conclude that if it is presumptively relevant, the employer has an obligation to respond within a reasonable period of time? Yes, correct. It would be of use and discretion to do so, no. In other words, well then, what is your position, that the Board must conclude that it's relevant before it concludes to the employer? I'm not sure exactly what your position is. Is your position is the Board can't make a per se rule one way or another? That's correct, Your Honor. Even if it's relevant? If it's relevant, that wouldn't be a per se rule because you'd have to take into consideration all the circumstances that are true. Your Honor, wait a minute. If the Board said, if the information is relevant, the employer must respond within a reasonable period of time, you say the Board could or could not do that? In the context of Truett, they cannot do that. Truett is actually a pretty strong case for the... I'm surprised you cite that. Because Truett holds that when an employer states that he cannot afford the union's increase, he must show his books, should he or she. That's correct, Your Honor. That's the strangest case for you. That's one of the worst cases from the employer's point of view, and you're citing that? The Court took into consideration through it all the facts and circumstances of the case and established a rule that totality of circumstances are important. But it is a per se rule now after Truett that if an employer says, I can't afford this, he must or she must turn over the books. That's a per se rule, is it not? It would be a per se rule, yes. It is a per se rule. That would be a per se rule, and that would not be allowed under the National Regulations Act. Wait a minute, Truett says, Supreme Court, Truett said yes. But they took into consideration more than just the inability to pay. In that case, in the bargaining context, they looked at the entire context of what the union was proposing, what the employer was proposing. Isn't that funny? I teach labor law, and I always teach that Truett stands for the proposition that if an employer says he can't afford the union's wages increase, he must or she must show the books. That's the rule of Truett. That's a per se rule. I'm surprised you're citing that. Okay, but this court in Cincinnati newspaper in 1991 decided that issue in turning per se. And the court in that case says that the act itself precludes almost any argument that an unfair labor practice in the bargaining context is a per se rule. That's this court's decision in 1991. And it's still good law in this circuit as well as I think most other circuits. Well, they not only ignored Truett, which I think requires a totality of circumstance, but secondly, the board ignored its own decision in Disneyland. It's a subcontracting case. In that case, the board says that information regarding the bargaining employees is not presumptively irrelevant. That's exactly the opposite they held in this case.  Wait a minute, wait a minute, wait a minute. They did not hold, is it the first seven questions were presumptively relevant? Is it seven or eight? The first seven questions were considered not presumptively relevant. Because they involve potentially subcontracting. They involve non-bargaining employees, correct? Well, involve potentially subcontracting, right? Correct. So the board therefore followed Disneyland there. They did in part, it's true. Then why are you saying it's inconsistent? Because in a Disneyland decision, the board says that information regarding subcontracting and even information regarding the bargaining employees and their terms and conditions of employment is considered not to be presumptively relevant. That's 180 degrees different than what they found in their entire case. In the case here, the request of information was information regarding bargaining employees, the terms and conditions of their employment. Wait, but in Disney, are you still talking about Disney? Sorry? Are you still talking about Disney? I'm talking about Disney, yes, Your Honor. Okay, but here, the last three items of the request for information, IJ, what were the letters? IJ, K, whatever they were, the last three. Yes, sir. They didn't ask about, the board points this out, they didn't ask about subcontracting. They asked about, for information about the loads assigned to Iron Tiger employees. That's what those three ask about. H, I, and J, they ask information. H, I, and J ask specifically about the loads assigned to bargaining unit employees. Correct. It doesn't say anything about subcontracts. That's the point. And here's the language in Disney. Wait, wait, do you agree with me or not? I agree. So this is not Disney? I agree with your statement that H, I, and J dealt with information regarding the bargaining employees. Okay, so that's presumptively relevant information under the board standards, correct? No. No? Because here's what Disney says. Information about subcontracting agreements, even those related to bargaining unit employees. All right, stop. You're not responding to, excuse me, to Judge Taylor. Suppose the last three questions were presented by themselves. I'm sorry? Suppose the last three questions were presented by themselves. Yes. Would that have been presumptively relevant? No. Why? Because as the court says, the board says, that the employees' terms of conditional employment is not presumptively relevant in Disneyland. Wait, that wouldn't have even involved Disneyland. Suppose the last three questions had been presented by themselves, not with regard to any allegation of subcontracting or contracting back to movers. Yes, sir. Just the last three questions had been presented by themselves. Yes. Why was that not presumptively relevant? Because Disneyland It's got nothing to do with Disney. It's got nothing to do with subcontracting. Okay, here's, okay, there's other reasons why it's not. Don't, don't, don't leave this so quickly. Let's just stick with it for a minute. Here's what Disney says, quote, information about subcontracting agreements, even those relating to bargaining with employees, is not presumptively relevant. The case is about subcontracting information. The last three items of the mail-in request do not ask about subcontracting. They ask about the loads assigned to bargaining unit employees, correct? Correct. So what's this case got to do with Disney? Because you didn't finish the quote in Disneyland because it says the terms and conditions of employment, which means Counsel, Disney would not be relevant if the last three questions were asked by themselves. Don't you agree to that? No, I don't. Why would Disney be relevant if the last three questions were presented by themselves? First off, predicate to make sure it's a presumption has to have some basis in terms of relevancy. The administrative law judge in this case made it specific that there's no allegation here, there's no claim that the employees were underpaid, there's no claim to the drivers were improperly considered. It's not relevant ab initio. He's saying from the beginning of time that request made on May 11th was not relevant because there's no nexus. In order to establish a presumption, whether we're looking at a presumption in McDonnell Douglas analysis for Title VII or any presumption, there has to be a predicate. There has to be a legitimate predicate. In this case, there is no legitimate predicate. Whatever the bargaining employees do by way of what loads they have, what they're taking, where they're going, doesn't prove anything. It just proves in fact that they did. I think this argument is more relevant to us than the argument based on Disney. I think they're all... In other words, because you really have to focus on these last three by themselves. All right. I think I understand your argument. And I have. In terms of in order to create that presumption, basically they've got to sit down and say it has to be some nexus. There has to be a predicate to that presumption. You just can't say if they asked a question on H, J, and I, what color hair they have or what their age is, how would that be presumptively relevant? And he has questions regarding the bargaining, but it's not their terms. I was thinking about hypothetical myself involving the question of what color hair. Can I ask you a question? And that is how hard would it have been for the companies to just say not relevant, we're not going to respond? The day after the union made the request, they had that conversation. And the lawyer for the company said the information you're asking for is a lot of BS. In response to that, Boyce and Anderson, who is the individual who is the union person, says, I know it's what I wanted. The administrative law judge in that case said in terms of his analysis that ‑‑ I guess I'm going to go back to my question again, which was how hard would it have been to send a letter back to have a record of you saying we're not going to respond because it's not relevant? It wouldn't have. We would have done that. We did it on December 27th, four months later. To be more precise, why couldn't they have just said right after the May 11th letter what they said in September? Wouldn't that have solved the problem completely? Could have, yes. Okay. So the board just says the employer here had an obligation to respond to the May 11th promptly. And although its response in September was adequate, it wasn't prompt. That's all this case is about, right? I think there's more to it. But you're right in terms of it could have done, could have, should have, would have. But the fact of the matter is if you read over the case and the facts in the briefs we presented, in terms of it was abusive, the union said before they made the information request, I will make living hell for you if you don't restate these three employees. They went through the entire process, and lo and behold, Boyce Anderson was true to his word. He made it hell for the company by making the request. 29‑page response. I'm not quite sure how it's hell if all you have to do is say no. Well, I think that Tom Jones, the day after request, said what you're asking for is a bunch of BS. Was this in response to the May 11th response? Yes, it was. The day after? The day after, yes. And the administrative law judge accepted that statement. In effect, the union never gave a reason for why it was BS and why we should ask for it. He said it's another reason why I find the information was irrelevant, and I take it as irrelevant evidence. Let me nail this down. The day after the May 11th request was made, there is a conversation between Anderson and the union representative and the attorney for the company. That's correct, Your Honor. Tom Jones, right? That's correct, Your Honor. And what does Tom Jones say with respect to the request of May 11th? He said, quote, the information you're asking for is a bunch of BS information. Is that the same as saying it's not relevant? I hope so. Well, I mean, no, that seems to me that's the question.  I don't know. I thought it was answered by this record where there was testimony that the phrase BS went frequently in conversations between these two people, so it really doesn't seem to have had the legal import you want to give it right now, especially given the union person responded, yes, but I need it. But then the administrative law judge answers that very question when he says that agreement that the information sought was bullshit. Absent an explanation regarding the information was needed confirms my finding that the information request was irrelevant. But he originally found it was presumptively relevant, and that's why he said your client violated the act, because it didn't respond promptly to presumptively relevant information. True, it was ultimately considered irrelevant or not relevant, but his finding was that the last three requests in the May 11th letter were presumptively relevant. Triggering the obligation to respond promptly. And that's what the dissent. You disagree with what I just said. I know that's what he said. Okay. As far as the. I know what the dissent said. I'm sorry. You know, we're reviewing the board's decision, not the dissent. Yes, you're right. The dissent doesn't agree with that. The dissent has the same view you do, which is that there should be no obligation to respond at all if the information is not relevant. And the board has a different view of that, which brings us back to Judge Silverman's very first question. What's wrong with that requirement, that an employer has an obligation to respond promptly to a request for presumptively relevant information? And I don't want to summarize Board Member Hayes' dissent, but he says that the acting general counsel and the board have said in no case to support their position where the information is irrelevant. It's all irrelevant, he says. Therefore, it allows for the hectoring of unions to basically put themselves in a position. The board could certainly come. Isn't it true the board could come out with a rule of law that reflected the dissent's view or the majority view, whichever was the majority, and we would have to defer to that, wouldn't we? No. Why? Because if you're looking at the totality of the circumstances and the harassment that the. I'm not necessarily. I'm not talking about this case necessarily. You may have a better argument, which I will explore with counsel. But with respect to the position of law, the majority says if it's presumptively relevant, the company must respond in a reasonable period of time. The dissent says, you know, it should depend on whether the information is actually relevant. So there are two different positions. Why wouldn't, why don't we have to defer to whichever is the majority view under our deference to the board? In the latter case, in terms of Hayes' dissent, basically there's no law violator there. In the prior example, there's a law. You're not answering my question, are you really? The question is why shouldn't we defer to the majority board's position that if a union requests presumptively relevant information, a company must respond within a reasonable period of time? Why shouldn't we not defer to that proposition? Because that's a per se rule. I like your argument from Truett, which sets forth a per se rule, which is really interesting. It doesn't. As a matter of fact, it says that you look at totality circumstances, just the opposite of per se. And this court in Cincinnati newspaper says the same thing. Far be it for any court to basically establish a per se rule in a bargaining case or determine what is good or bad faith bargaining without an entire review of all the circumstances. Okay. Are you done? Yes. Okay. Thank you. We'll hear from the board. May it please the court. Can you hear me? May it please the court, Ruth Burdick, appearing for the National Labor Relations Board. I can tell from the argument so far that this court has a very strong understanding of this case. But you know what troubles me, counsel? Why are those last three questions presumptively relevant? I looked at the record. And it's in response to the company's letter item five. And these are 10,000 deliveries. And there are questions about these 10,000 deliveries that took place. I'm trying to figure out what the devil's the relevance of it. Presumptively. What is the relevance? The union never explains it in the September, in the discussions after September 27th. The union never explains why it wants this, why it's remotely relevant. And counsel uses the example, which we want to follow up. Suppose the union asks, how many employees color their hair? Would that be presumptively relevant? Well, that would be a very outlier of a question, obviously. And I must say that usually, typically, presumptively relevant information is with regards to any information with regards to bargaining units. Well, that's about bargaining units? How many people color their hair? Well, that would be a situation where it would be very simple and very minimal burden for the employer. So even in that case, the employer has to respond. Is that your view? Anything that relates to employees in the bargaining unit has to be responded to. It's presumptively relevant. Anything. I have to stick with the facts and the holding of the board in this case. Well, that doesn't work. I'm asking you what the presumption is. In my opinion, what we have here is a presumptive. Presumptively relevant information needs to have a prompt response. Well, wait a minute. Why is it presumptively relevant? That's what I couldn't figure out. No, I understand that these last three questions do not relate to movers. So it doesn't relate to subcontracting. Well, I'm trying to figure out why the last three questions are not just harassment. They look like harassment to me. Well, see, the board describes on DNO1, the first page of its decision, that this information request came and was originated from the March 16th email from the union that raised a concern with regards to the dispatch procedures. And with regards to that, the union was obviously, it turns out, operating under a misconception of who had contracts, who had the ability to dispatch, and it believed that Iron Tiger could dispatch either to the employers, to the unit employees or outside of employees. So that original request. Iron Tiger can dispatch its employees. That's what this, but that union knows that. I don't understand why this massive 10,000 references is relevant to anything. The union in the meeting never suggests the relevance. Well, Your Honor. So I'm trying to figure out why it's presumptively relevant. It cannot be that a union can request any information concerning bargaining unit employees, including my hypothetical, whether anybody colors their hair, and that's presumptively relevant. Well, here, Your Honor, we're blending the questions of relevance and presumptive relevance. And the board standard for presumptive relevance that is recognized by this court is a broad discovery type degree of relevance. And the purpose of that is to cover and include information that would help the parties bargain. But nobody in this case, counsel, nobody in this case, neither the union nor the board, ever describes why this information would be presumptively relevant, other than to say it involved bargaining unit employees. That can't be enough. It has to be, as counsel puts out, eventually came to, it has to have some reason. Otherwise, I suppose you're going to ask, how many of the truck drivers are left-handed? Well, that wouldn't relate to any bargaining working condition, term and condition of employment, unless, of course, there was an issue with regards to a uniform work rule. You can't have beards. So it wouldn't be presumptively relevant under those circumstances. So you will abandon the notion that any information concerning bargaining unit employees is presumptively relevant? You'll abandon that point? No, but the board here says that those three items, those last three items in the information request were presumptively relevant. I know, but I don't understand why they're presumptively relevant. Nobody explains that. Well, part of it is looking at the facts of this case illustrate that. On March 16th, the union emails the company and says, I have reason to believe that not all of the Iron Tiger dispatch loads are being put on the board. And then he wanted to know, in the first request, who was doing what, which loads were going to truck movers and which ones were Iron Tiger loads. And then the company fully responded with both. That's not what the last three questions asked. Well, the last three questions were an amplification or supplement. When they received the answer to five, which was nothing but a data stream, as you point out, of multiple numbers of loads, the union then requested additional information. Well, when they subsequently met about it, this is troubling. The company said, look, this is ridiculous and this is burdensome. And the union gets agreed. In a situation like this, we have an information request. The response needs to be properly made. And simply posturing in a comment made, a bargain got together. I'm trying to figure out why the union, you know what it looks to me like the union lawyer said, we're asking for all questions about subcontracting, but I better throw in three questions that look like they involve bargaining unit employees. So, therefore, we'll have some hook. Is that what's going on here? This is good gamesmanship? No, Your Honor. Here, the board specifically found the union was requesting information with regards to dispatch procedures, not subcontracting. That's not what the focus of the letter was. The letter was basically this interrelationship between truck movers and Tiger. So these last three questions sort of come out of nowhere, and they don't seem to be relevant to anything going on between the company and the union. Well, once again, the presumption is based on, in large part, this broad discovery type of relevance that the board and this court have recognized in this area. And at this level of bargaining, a broad standard like this, it captures very often possibly irrelevant information that can then be disputed and objected to, furthers the collective bargaining, furthers the party's resolution of matters. And here it's not. In my view, your proposition of law is one that we would have to defer to is perfectly reasonable. Yes, Your Honor. But you seem to have the wrong case to me to make the point. Well, it's within the board's expertise to develop rules. Yeah, well, if it looks like the union was playing games here, it would be arbitrary and capricious to conclude that the company was acting in bad faith. Well, here, to say that the union was playing games would be the same as accepting their defense that this was bad faith. And bad faith is measured at the time of the request. You're right. But the union had already, in a sense, played a little bit of faith. So the regional director had to hit them with an order from the board. Well, in my view, and the board didn't say before. Putting that aside, I'm trying desperately to understand why these three questions were perceived by the parties as relevant, because when there is a discussion about them, the union drops it completely. Well, I think this case illustrates, as the CEO of Duval's testimony indicated, he himself thought that was bargaining information. And I think that, in general, on the shop floor and in negotiations, parties on both sides generally in the industry consider questions with regards to bargaining unit members to be presumptively relevant. Do you agree that this case is all about one simple point, which is that the board's view is the employer should have sent the September 27 letter months earlier, right? Yes. That's it? There's nothing else about this case? Yes, Your Honor. And the duty to – the board found that recently that good faith requires a prompt response. A what? That good faith requires a prompt response in these circumstances. And the board's decision here with regards to the holding, the key holding with regards to if you request – if presumptively information – relevant information is requested, prompt response is necessary, is based on solid principles recognized by the board in this court, encompassing both unreasonable delay in these cases with regards to information, coupled with cases that recognize that presumptively relevant information needs to be responded to. Well, I want a question, though, on this response. Do you agree that if the response had just been, that's not relevant, that would suffice? Well, here – Promptly. I think the best illustration of the best response was the one given on September 27. That may be the best response. My question, again, is would it be sufficient for an employer when it gets hit with something like this to simply say that's not relevant? With regards to the last three, just to be clear? To the entire request. That would at least begin – in my view, that would at least begin the bargaining process and discussions that would then reach a resolution. Would it very well do that? Would it be legally sufficient? Here's my concern, just so I'll put it out there for you, is that if the board's adopting a rule, it just wants the prompt response for the sake of moving this process forward, as you've indicated, that's one thing. But if, in fact, the next case is going to be an employer who says that's not relevant on May 12th or May 13th, and then the board's going to have a decision saying, no, no, no, you have to explain in detail, well, it's not, and go through all that, and then you're sanctioning the employer for that. And the next case is going to be increasing burdens. And then what they're worried about, about this used as a weapon, when it turns out no one's asking for actually relevant information, is a real concern. But if a simple that's not relevant, move the process forward will suffice, then their concerns about use of this as a weapon will disappear. Well, the test as it stands now is if presumptively relevant information is requested, or if response or objections need to be presented. Why is it a simple answer to Judge Millett's question? Yes. All they have to do is say it's not relevant. And if it isn't relevant, there's no obligation to respond. That is the legal question, right? So why not just say the employer's only obligation is to say in writing, it has to be in writing, right? He just can't say it's bullshit. He's got to say it's not relevant in writing, right? No, actually, the board did not say that it had to be in writing. The board said it either could be in writing or they didn't. So instead of telling him it was, instead of saying it was bullshit. I didn't mean to interrupt. No, but that's a good point. Well, here the objections were not just that it wasn't relevant as of September 27th. Counselor Angeli, the board could respond orally or in writing? I myself am not familiar with any cases that actually involve an oral response. But why wouldn't that be enough if everybody agrees that, in fact, they said to the union this information is not relevant? And there's no dispute that they, in fact, said that. No, as a union, a person doesn't testify, oh, that's not what they said. Everybody agrees that 24 hours after getting the letter, the employer said to the union, this is not relevant. Well, in fact, in this case, the board did not recognize these statements that the other side has cited with regards to these conversations with regards to, you know. That's what I get. Again, just this is not relevant. That's all. Now, they do that at their risk. They could go to a hearing and lose. It could be found to be relevant, and then you would promptly sanction. I'm talking about a case like this. They say this is not relevant. The union then takes the process forward to a hearing, and the ALJ and board say, you are darn right, that was not relevant. Then they will have promptly responded. You won't ding them for that, and they'll be right. They didn't have any duty to respond. What's wrong with that paradigm? Well, in my view, that factual matter, that factual scenario you present wouldn't be a problem. But here we have a situation where under the rules of how this works, there's a burden shifting, presumptively relevant. I know what you're saying. That's not relevant. You have discharged your duty. I'm sorry. I'm just trying to get the point that if the employer then alleges that it's not relevant, the union is then required to come forward and show relevance. Right. So the burden shifts back and forth with these allegations. So I see myself no problem with that. The burden could be met by that's not relevant. And then again, there are risks of the board disagreeing. In my view, but the board itself has never said exactly that. But here it did find that good faith and its interpretation of the collective bargaining duties under the act did require this employer to respond promptly for the reasons in the September 27th response was not prompt. Do the last three questions have anything to do with the rest of the letter? I'm sorry. What letter are you referring to? The April letter of the, excuse me, the May 11th letter. Do the last three questions. The information request. Yes. Do the last three questions have anything to do with the rest of the letter? The information, the last three items were an amplification supplement to their response to number five. I know. I'm asking a question. Do the last three questions have anything to do with the rest of the union's letter? Oh, with the rest of the information request? Yes. Well, and as far as they were looking at who was dispatched, either bargaining or employees. The last three questions have nothing to do with the subcontracting claim, right? Nothing whatsoever. They were in regards to the dispatch procedures. Would you just answer the question? It has nothing to do with the alleged subcontracting. What we're really getting at here is the ultimate finding by the board that it wasn't relevant. No, but I'm asking you the question. I'm looking, here's the employer looking at this letter. Yes. The last three questions either relate to the earlier questions or they don't. I was trying to think if I were the employer looking at these last three questions, I would have initially thought they had some relevance to the first eight questions. Is that, do you think, the logical reading? Well, not necessarily. I mean, often information requests cover many different topics. Yeah, I know. I understand. There's an issue here about the alleged subcontracting, but in this case contracting back from Tiger to move, move. And that's what the focus is. And so these last three questions, you read it and think that it must have something to do with the first part. It doesn't say anything different. That's one possible reading. Is that correct? That's one possible reading. If that's true, it wouldn't be presumptively relevant because it would be related to subcontracting. Well, the board here, we have to realize, but the board here specifically found it was presumptively relevant because those three questions ran to bargaining unit. And you're not answering my question. I'm not sure if I can, Your Honor. Because the board doesn't accept it. Exactly. That's what's so confusing about it. But here with no justification or even mention of the response. How did the company on September 27th answer the last three questions? They actually asked the union to present relevance. They said it's not remotely relevant. They said it's not remotely relevant, and the union agreed it wasn't relevant. Ultimately, it did after it understood its misunderstanding. Well, the last three questions, that's what's so confusing. Because the union is suggesting the last three questions relate to subcontracting. So, therefore, they understand now on the subcontracting, so, therefore, the last three questions are not relevant. So the union, therefore, interpreted the last three questions it asked as relating to subcontracting. Well, Your Honor, I think this really demonstrates that the union was confused, was operating on misunderstanding. You understand the point I'm making? The union seems to assume that the last three questions related to subcontracting, in which case they would not be presumptively relevant. No, here the union. If the last three questions related to subcontracting, under your law, it would not be presumptively relevant. Well, here the court found it related to dispatch procedures, not subcontracting. I'm asking if it was connected to the first eight questions, it would relate to subcontracting, right? That would be my understanding. And then it wouldn't be presumptively relevant. Under Disneyland, it would be a hard press. Okay. All right. Are you done? Okay, thank you. Thank you. Did counsel have any time left? No, we're done. Okay. You can take two minutes if you'd like. The board just argued that we're talking about this case in the context of good or bad bargaining. And in this case, whether the court looks at this as a matter of harassment, whether it looks at it in terms of any other defense, including Maumau's decision of this court in terms of affirmative defense that the employer raises, I think we've got to understand it in that context. Let me just ask you this. Let's just assume, for purposes of what you're about to say, that even though we might ourselves agree with you about harassing nature of this request, that we don't feel, given the standard of view, that we can second-guess the board judgment that it wasn't harassing. So why don't you assume that it's – unless you want to argue about that, why don't you assume it wasn't harassing? Make your argument from that perspective. First, I'll assume that I'll argue the point that neither the administrative law judge or the board even dealt with this issue in terms of the factual review. They were arbitrary and capricious in their analysis. They dealt with one issue. Forget the harassment question. That's what he's saying. Okay. Forget it. Okay, we'll forget it. We can't make our own factual determination, even if we might agree with the determination as to whether the board's position with respect to the last three issues was arbitrary and capricious. But we can't go into the question of whether the union was harassing. So now go ahead. I can't assume that because I disagree with that. Okay, well, do you want to argue that, then? Is that the key to the case? It's part of the case, yes, Your Honor. Key to it, there's many layers to this case, but if we look at Mammoth and this court's decision, you recognize that a company can raise it from a defense of harassment and avoid any barrier to a bad-fit bargaining. Yeah, well, I have my – you know what, that reminds me of the ancient principle of all of mine had wheels should be a trolley car. Okay. Because you didn't prevail on that. It's a factual question. It's not one we can reach out to the board. In fact, the September 27th letter says just what you said they should say. They said it was harassing and burdensome. Yes, correct, Your Honor. But the board's point is it was too late. That's all this case is about, nothing else. Okay, it doesn't seem to – Here we are years later taking all this time of this court and you and the board, and the only issue is should the company have sent a letter that everybody agrees was adequate three months earlier. That's all this case is about. And we'll deal with that issue in terms of the board says that letter resolves the dispute. Test that. Why did it take them three months to issue a complaint against Iron Tiger then? I don't know. It's three months after September. They're investigating the case. Why didn't they say you satisfied the case on September 9th, 27th? There's no prejudice. They admit there's no prejudice to the union for not giving them anything because there was nothing to give them. In terms of dealing with this issue, there still has to be an honest claim that's made by the union they never did have an issue of from the beginning of time. In terms of the board says you've solved the problem you should have done earlier. How earlier? One week earlier? Two weeks earlier? One month earlier? Two months earlier? Three months earlier? The day after? Four and a half months is too long. That's a terrible argument, Counselor. Not a – That argument is terrible. I mean, to ask the question how long is too long is not up to this court. That's a board decision, isn't it? But in this context, you say what difference would it have made to this case when the NLRB issues a complaint three months after we wrote the September 27th letter? I think it is important in that context. Okay. Anything else? Any other questions, Your Honor? Anything else? No, thank you. Case is submitted.
judges: Tatel, Millett, Silberman